**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **PHOEBE DOUGLAS and** ) | |
| **LINDSAY MAGUIRE,** ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | **CIVIL ACTION NO.** |
| **v.** ) | **1:24-cv-07237** |
| ) | |
| **NAIK CONSULTING GROUP, P.C.,** ) | |
| ) | **JURY TRIAL DEMANDED** |
| *Defendant*. ) | |

_____

**COMPLAINT**
_____

Plaintiffs Phoebe Douglas ("Ms. Douglas") and Lindsay Maguire ("Lindsay Maguire") ("collectively Plaintiffs") bring this Complaint against Defendant Naik Consulting Group, P.C. ("Defendant" or "Company" or "Naik") to redress violations of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL"), the New York City Human Rights Law, N.Y.C. Admin. Code § 8–107 ("NYCHRL") and the Family Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA").

## NATURE OF CLAIMS

1.      Ms. Douglas, a Black woman, and Ms. Maguire, a White woman, dedicated a combined 16+ years of service to Naik as civil engineers. As two of very few female engineers both nation-wide and within Naik, they suffered much of the disparate treatment that women face in professional industries, including lower pay, lack of respect, and heightened performance standards. Despite this, they were dedicated to building successful careers for themselves, while lifting up other women and minorities along the way. Ms. Maguire and Ms. Douglas led the New

York Civil Design group at Naik, wherein they hired an extremely diverse group of engineers and support staff. This diversity stood in stark contrast to the rest of the Company, which was largely made up of White and non-Black men.

2.      In Spring 2024, Ms. Maguire and Ms. Douglas complained to the Company's majority owner, Mr. Sanjay Naik ("Mr. Naik") about the discriminatory and disparate terms and conditions to which they (and their team) were subjected compared to the majority male and non-Black teams. Just a few weeks after their protected activity, Naik demoted Ms. Maguire and Ms. Douglas as part of a pretextual "restructuring" that—tellingly—*only* affected them and their team. During Summer 2024, Naik terminated the employment of several women and women of color on the NY Civil Design team. In August 2024, the week after Ms. Maguire and Ms. Douglas filed their EEOC Charges, and while Ms. Maguire was on FMLA leave, Naik terminated their employment for pretextual reasons.

## PARTIES

3.      Plaintiff, Ms. Douglas, is a Black woman and a resident of the Bronx, New York. Naik employed Ms. Douglas from November 2017 until August 2024 and at all times relevant to this Complaint. Throughout her employment with Naik, Ms. Douglas primarily performed work for Naik in the Eastern District of New York.

4.      Plaintiff, Ms. Maguire, is a White woman and a resident of Chappaqua, New York. Naik employed Ms. Maguire from January 2015 to August 2024 and at all times relevant to this Complaint.  Throughout her employment with Naik, Ms. Maguire primarily performed work for Naik in the Eastern District of New York.

5.      Defendant Naik is a professional corporation with its principal place of business in New York City, New York.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs assert federal law claims under Section 1981, Title VII, and the FMLA.

7.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343 because Plaintiffs' claims are brought to recover damages for deprivation of equal rights.

8.     This Court has supplemental jurisdiction to hear Plaintiffs' claims brought pursuant to the laws of New York pursuant to 28 U.S.C. § 1367.

9.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)–(c) because Defendant conducts business in this district and a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this district.

## ADMINISTRATIVE REMEDIES

10.     Ms. Douglas filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 5, 2024 alleging race discrimination, gender discrimination, and retaliation. (**Exhibit A**).

11.     On September 11, 2024, Ms. Douglas amended her Charge to include additional allegations of retaliation. (**Exhibit B**).

12.     Ms. Maguire filed a Charge of Discrimination with the Equal Employment Opportunity Commission on August 5, 2024 alleging gender discrimination and retaliation. (**Exhibit C**).

13.     On September 11, 2024, Ms. Maguire amended her Charge to include additional allegations of retaliation. (**Exhibit D**).

14.     Ms. Douglas and Ms. Maguire will amend this Complaint once they receive Notices of Right to Sue from the EEOC.

## FACTUAL ALLEGATIONS

15.     Naik hired Ms. Maguire in January 2015 as a Senior Civil Engineer. Throughout her employment with Naik, Ms. Maguire was an outstanding performer, and she earned two promotions during her first five years with the Company.

16.     In January 2018, Naik promoted Ms. Maguire to Deputy Director of Civil Engineering. In September 2020, Naik again promoted Ms. Maguire to Vice President of New York Operations in the Design and Survey Division. As a Vice President, Ms. Maguire reported directly to Sanjay Naik ("Mr. Naik"), the Company's majority owner.

17.     Naik hired Ms. Douglas in November 2017 as a Civil Engineer. Ms. Douglas was an exemplary performer, and she was quickly tasked with additional responsibility within Naik.

### Naik Denied Ms. Douglas a Title and Pay Commensurate with Her Work Product.

18.     As a Civil Engineer, Ms. Douglas reported to Andrew Schueller ("Mr. Schueller"), whose title at that time was Vice President of Civil Engineering.

19.     Mr. Schueller made inappropriate and gender-based inquiries into Ms. Douglas' personal life. For example, when Ms. Douglas asked for a raise, Mr. Schueller asked if she was married or had children. When Ms. Douglas said she did not, Mr. Schueller said, "Oh so you just want to fund your lifestyle." Naik did not use the marital or parental status of male employees to determine their compensation.

20.     In September 2020, Naik promoted Ms. Douglas to Manager and re-assigned her to report to Ms. Maguire. Unlike Mr. Schueller, Ms. Maguire was an extremely fair and unbiased supervisor.

21.     While Naik assigned Ms. Douglas the "Manager" title, Ms. Douglas actually performed the duties of a "Director" or "Deputy Director." Many of Ms. Douglas's colleagues

referred to her as a "Director" or "Deputy Director," yet Naik refused to convey that official title (or pay) on Ms. Douglas. Ms. Maguire advocated to Naik's management that Ms. Douglas should receive the "Director" title, but Naik refused.

22.     Naik claimed that Ms. Douglas did not hold a Professional Engineer certification, and therefore, could not hold a "Director" title. However, Naik assigned Patricia Quinones ("Ms. Quinones") a Vice President title, which is a higher rank than "Director." Ms. Quinones is non-Black and does not hold a Professional Engineering license. Like Ms. Douglas, Ms. Quinones only maintains an Engineer in Training certification.

23.     Naik does not have any uniform policies in place for determining titles and promotions. As a result, White and non-Black men are disproportionately assigned executive-level titles, while Black and female employees are asked to do similar work under less-prestigious titles. For example, two women run the marketing department for the entire Company, and neither woman has an executive title. Additionally, a Black man runs IT for the entire company, and he does not have an executive title.

24.     In addition to denying Ms. Douglas a "Director" or "Deputy Director" title, Naik paid Ms. Douglas less than non-Black, male employees performing the same job duties as her. For example, Naik paid Ms. Douglas $68/hour in 2024. In contrast, Naik paid CJ Anderson, the Director of Strategic Pursuits, $105.44/hour; Jayesh Patel, the Deputy Director of Survey, $93.58/hour; and Jack Harman, the Director of Budget Finance, $80.78/hour. None of these male employees held professional licensures in the areas of practice relevant to Naik's business operations.

**Male Leadership Refused to Recognize Ms. Maguire's Authority and
Input Because of Her Gender.**

25.    From January 17, 2022 to April 25, 2022, Ms. Maguire took maternity leave for the birth of her second son. Following Ms. Maguire's maternity leave, Naik began treating her and her team as "second class" employees compared to male-dominated teams.

26.    Naik's New York office has two divisions: the Design Division (led by Ms. Maguire) and the Project Management and Construction Management ("PMCM") group. Mohyi Soliman, ("Mr. Soliman"), an Executive Vice President, was the Director of the PMCM group, and a 5% owner of the Company.

27.    Mr. Soliman excluded Ms. Maguire from important publications, ignored her ideas, and credited her ideas to male team members. His discriminatory treatment extended to the female and otherwise diverse members of Ms. Maguire's team.

28.    For example, in Summer 2022, Ms. Maguire came up with an idea for Naik's participation to be showcased in a New York City Department of Transportation public event called "Summer Streets." Although this was Ms. Maguire's idea and her team was responsible for most of the effort to execute the idea, Mr. Soliman created handouts for the Company's event booth that only advertised his group, which was primarily male.

29.    In September 2022, Mr. Soliman ignored Ms. Maguire's suggestions again regarding a booklet advertising the Design Division. Although Ms. Maguire was responsible for the Design Division, Mr. Soliman explicitly instructed the graphic designer to ignore Ms. Maguire's suggestions and, instead, to list seven male design staff members, instead of including Ms. Maguire.

30.     In October 2022, Mr. Soliman removed Ms. Maguire from correspondence about a request for a proposal from a client pertaining to design work despite Ms. Maguire leading the design team.

31.     In October 2022, Ms. Maguire complained to Mr. Naik in writing and verbally that Mr. Soliman refused to respect her and her team, credit their ideas, and treat them as equal team members compared to male employees. Ms. Maguire complained again to Marianne Provanzo ("Ms. Provanzo"), the Human Resources Manager at the time, about Mr. Soliman's lack of respect for her as a female Vice President. However, neither Mr. Naik, nor Ms. Provanzo, took any helpful or concrete action to remedy the work environment.

32.     In November 2022, Mr. Soliman prepared a presentation showing "Naik Leadership," listing primarily men. Ms. Maguire was the only woman included in the presentation. The presentation did not include any of Ms. Maguire's female team members or showcase their efforts. Ms. Maguire requested that Mr. Soliman edit the presentation to also include female team members and showcase their work.

### Naik Provided Male-Led Teams Additional Resources and Support, Which It Denied Ms. Maguire's and Ms. Douglas' Team.

33.     Throughout 2023, Naik provided additional staff and numerous additional resources to Mr. Soliman and the PMCM team. The Civil Design team, led by Ms. Maguire and Ms. Douglas, was denied these additional resources.

34.     For example, Naik provided the PMCM team a Corporate Safety Officer, a Branding & PR Manager, Strategic Growth Initiatives, Business Development Leaders for specific agencies, and a Project Controls group to manage all project budgets, and several non-billable interns.

35.     Naik also permitted the PMCM leaders to award bonuses to team members that were much larger than the bonuses that Ms. Maguire was permitted to award to her team, which was approximately 50% female.

36.     The PMCM group also had access to large expense accounts that Naik denied to the NY Civil Design group.

37.     This lack of resources, budget, and staff-retention measures (like bonuses) put Ms. Maguire and Ms. Douglas at a serious disadvantage, requiring their team to exert substantially more effort to achieve the same results.

**White, Male Colleagues Refused to Recognize Ms. Douglas' Authority**
**Because of Her Race.**

38.     In May 2023, Naik assigned Ms. Douglas as the Project Manager for the Metro North Infrastructure Project. The project consisted of five sub-projects, each with their own sub-manager. Ms. Douglas was the Manager overseeing the entire project.

39.     Naik assigned Anthony Osterberg ("Mr. Osterberg"), the Associate Vice President and Director of Mechanical, Electrical, and Plumbing Services, as the sub-manager over the mechanical, electrical, and communications scope within three of the five sub-projects. Mr. Osterberg is a member of the PMCM group.

40.     Mr. Osterberg refused to recognize Ms. Douglas (a Black woman) as the Project Manager and treat her with the commensurate respect. Mr. Osterberg refused to communicate directly with Ms. Douglas, but instead, insisted on going to Ms. Douglas' direct supervisor (Ms. Maguire).

41.     Mr. Osterberg undermined Ms. Douglas' authority and refused to execute his responsibilities. For example, Mr. Osterberg was often absent when his team required guidance and direction. Because Mr. Osterberg was not there, Ms. Douglas frequently stepped in to provide

basemaps for sites and coordinate site visits. Although Ms. Douglas was only forced to perform this work because Mr. Osterberg was absent, Mr. Osterberg was opposed to Ms. Douglas charging management hours to the project and would argue and contest Ms. Douglas' decisions.

42.    Mr. Osterberg further obstructed Ms. Douglas' ability to be successful as Project Manager by insisting that his teams needed to go over budget. When Ms. Douglas requested that his team pause charging on the project, Mr. Osterberg outright refused and ignored Ms. Douglas' requests.

## Ms. Maguire and Ms. Douglas Engaged in Protected Activity by Complaining that Naik Gave Male and Non-Black Team Members Preferential Treatment.

43.    On January 2, 2024, Ms. Maguire met with Mr. Naik for her annual performance review. During that meeting, Ms. Maguire engaged in protected activity by complaining that the male-led PMCM team (including Mr. Soliman and Mr. Osterberg) refused to hold their team accountable, meet deadlines, and stay on budget, which negatively impacted the NY Civil Design team, led by Ms. Douglas and Ms. Maguire.

44.    Mr. Naik disregarded Ms. Maguire's complaints and shifted the conversation to Ms. Maguire's Business Development efforts. Specifically, Mr. Naik wanted Ms. Maguire and her team to bring in more work in 2024. Ms. Maguire responded that she understood, but that Naik was not providing her the same resources to bring in work as the Company provided to the PMCM group.

45.    On January 23, 2024, Ms. Maguire and Ms. Douglas met with Mr. Naik and Mr. Soliman to complain that Mr. Osterberg and the PMCM team continually undermined their authority, were hostile to them, and were obstructive to their ability to operate successfully. In response, Mr. Soliman claimed that Mr. Osterberg was the Company's "sixty-million-dollar man" and "didn't have time for this."

46.    Naik refused to hold Mr. Soliman, Mr. Osterberg, and the male-led PMCM team responsible for their actions, which directly negatively impacted Ms. Maguire and Ms. Douglas. When Ms. Maguire and Ms. Douglas complained that they were being held to heightened performance standards, denied equal resources, and being undermined and treated in a hostile manner by male employees, Naik did nothing to remedy their complaints.

**Naik Demoted Ms. Maguire and Ms. Douglas Approximately 30 Days After Their Complaints About Disparate Treatment.**

47.    On May 7, 2024, Naik announced a "reorganization" for the alleged purpose of streamlining operational and financial efficiency. As part of the "reorganization," Naik demoted Ms. Maguire to General Civil Manager and demoted Ms. Douglas from her Manager title. Naik's internal documents reflect that Naik management began discussing and planning this "restructure," by at least March 1, 2024 (approximately 30 days after Ms. Maguire and Ms. Douglas complained to Naik management on January 23, 2024).

48.    Mr. Naik was clear that the "reorganization" was not performance-motivated and that he had never received any negative performance feedback on Ms. Maguire, Ms. Douglas, or their team, from clients. In fact, Naik had never assigned Ms. Douglas or Ms. Maguire any negative performance feedback during their tenure with the Company.

49.    As part of the "restructuring," Naik demoted Ms. Maguire from the New York market to the New Jersey market (objectively less prestigious), and re-assigned Ms. Maguire to report to her former peer, Hina Patel ("Ms. Patel"). Ms. Maguire had previously reported directly to Mr. Naik and had broad supervisory and authority. Following her complaint, Naik reduced Ms. Maguire's supervisory role and responsibilities.

50.    Naik removed Ms. Douglas from its leadership organization chart entirely and completely excluded Ms. Douglas from all management calls and meetings, in which she had

previously been included. Naik also re-assigned several engineers who directly reported to Ms. Douglas out of her reporting line so that Ms. Douglas no longer had direct reports.

51.    Naik did not "reorganize" the male-led teams and did not demote any male employees.

## Naik Terminated the Employment of Ms. Maguire and Ms. Douglas Just Nine Days After They Filed Their EEOC Charges and While Ms. Maguire was on FMLA Leave.

52.    On June 10, 2024, Ms. Maguire began protected FMLA leave to cope with the extreme stress and anxiety caused by Naik's discriminatory work environment.

53.    On August 5, 2024, Ms. Douglas filed a Charge of Discrimination with the EEOC alleging race and gender discrimination and retaliation.

54.    On August 5, 2024, Ms. Maguire filed a charge of Discrimination with the EEOC alleging gender discrimination and retaliation.

55.    On August 7, 2024, Ms. Douglas sent an email to Mr. Naik and Naik's Human Resources Department complaining of race and gender-based discrimination within the Company and concerns about Naik encouraging illegal overhead charging practices which is in violation of public agency contracts held by Naik.

56.    On August 9, 2024, Ms. Maguire sent an email to Mr. Naik and Naik Human Resources reporting additional instances of gender discrimination that Ms. Maguire suffered immediately prior to her FMLA leave.

57.    On August 13, 2024, Ms. Douglas sent another email to Mr. Naik and Naik's Human Resources flagging race and gender discrimination in Naik's promotion policies.

58.    Neither Mr. Naik, nor Naik's Human Resources, responded to any of Ms. Maguire's or Ms. Douglas' emails.

59.     On August 14, 2024, one day following the last complaint of discrimination, Naik terminated Ms. Maguire's and Ms. Douglas' employment.

60.     Naik claimed it terminated Ms. Maguire's employment as an additional "restructuring" effort and Ms. Douglas' employment because of "lack of work." However, this was pretextual. Naik re-assigned Ms. Maguire's duties to Ms. Patel (who did not complain or engage in protected activity). Additionally, Naik posted job advertisements online for Civil Engineers and Business Proposal Manager positions the following day. These job descriptions listed the same duties that Ms. Maguire and Ms. Douglas previously performed.

61.     In addition to terminating Ms. Maguire's and Ms. Douglas' employment, Naik also disproportionately terminated the employment of other women of color and other employees who inquired about FMLA leave.

62.     In Summer 2024, Naik forced Ms. Maguire to provide five names of team members whose employment would be terminated. Ms. Maguire pushed back because none of the team deserved to be fired. Naik threatened Ms. Maguire with discipline if she did not comply. Ms. Maguire provided the names of three men and two women to Naik. Naik terminated the two women, plus another woman on the team, but none of the men. Instead, Naik found work for the men in other departments, or permitted them to work part-time. All three of the women were women of color. Naik only terminated the employment of one male employee on Ms. Maguire's former team; he had recently inquired about taking FMLA leave.

**COUNT ONE**
**Title VII - Gender Discrimination**
**On behalf of Phoebe Douglas and Lindsay Maguire**

63.     Plaintiffs incorporate by reference paragraphs 15 to 62 as alleged above.

64.     Title VII makes it unlawful to "discriminate against any individual with respect

to compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000(e)-2.

65.     Naik is an "employer" as defined by Title VII.

66.     Plaintiffs were "employees" as defined by Title VII.

67.     Plaintiffs were qualified for their roles at Naik. Naik never issued either Ms. Douglas or Ms. Maguire any negative performance feedback. Instead, both Ms. Maguire and Ms. Douglas received promotions during their tenure with Naik.

68.     Both Ms. Douglas and Ms. Maguire are female and members of a protected class.

69.     Naik subjected Ms. Douglas and Ms. Maguire to adverse terms and conditions of employment because of their gender.

70.     Naik denied Ms. Douglas equal pay with male coworkers who performed substantially-similar job duties.

71.     Male coworkers refused to recognize Ms. Douglas' authority because of her gender and routinely obstructed her ability to perform her job.

72.     Naik denied Ms. Maguire the same resources, authority, and recognition that it awarded to male employees. Male coworkers excluded Ms. Maguire, ignored her input, and intentionally dismissed and diminished her accomplishments.

73.     Naik demoted Ms. Douglas and Ms. Maguire because of their gender in its May 7, 2024 "restructuring." Naik did not demote any male employees.

74.     Naik terminated Ms. Douglas' and Ms. Maguire's employment on August 14, 2024 because of their gender.

75.     Naik disproportionally terminated the employment of women in 2024, while

transferring male employees to other roles or finding them new employment.

76.     Naik acted in a willful and wanton manner and in callous disregard for Plaintiffs'

federally protected rights.

77.     As a direct and proximate result of Naik's discriminatory conduct, Plaintiffs

have suffered and will continue to suffer considerable injury, including but not limited to loss of

substantial past and future salary and income, mental anguish, emotional distress, humiliation,

and other compensable damages unless and until this Court grants relief.

## COUNT TWO
### Title VII - Retaliation
### On behalf of Phoebe Douglas and Lindsay Maguire

78.     Plaintiffs incorporate by reference paragraphs 15 to 62 as alleged above.

79.     Title VII makes it unlawful for an employer to discharge any individual, or

otherwise to discriminate against an employee with respect to his compensation, terms,

conditions, or privileges of employment, because the employee engages in protected activity and

reports acts of discrimination. 42 U.S.C. § 2000e-3(a).

80.     Naik is an "employer" as defined by Title VII.

81.     Plaintiffs were "employees" as defined by Title VII.

82.     Ms. Maguire engaged in protected activity when she complained to Mr. Naik on

January 2, 2024 that male-led teams received more resources than her and her team and that she

and her team were being held to a heightened performance standard compared to male-led teams,

while being denied equal resources.

83.     Both Ms. Douglas and Ms. Maguire engaged in protected activity on January 23,

2024 when they complained about Naik's refusal to hold male employees to the same performance

standards as female employees.

84.     By March 1, 2024, approximately 30 days after Ms. Douglas and Ms. Maguire engaged in protected activity, Naik leadership began discussing a "restructuring."

85.     On May 7, 2024, Naik retaliated against Ms. Douglas and Ms. Maguire by demoting them, including reducing their responsibility and supervisory capacity, re-assigning them to a lower position in the reporting hierarchy, and re-assigning them to a less-prestigious geographic region.

86.     On August 5, 2024, both Ms. Douglas and Ms. Maguire engaged in protected activity by filing Charges of Discrimination with the EEOC.

87.     From August 7-13, 2024, Ms. Douglas and Ms. Maguire continued to send internal complaints of gender discrimination and other illegal overhead charging practices, along with other unlawful employment practices to Naik's majority owner and Naik's Human Resources Department.

88.     On August 14, 2024, Naik retaliated against Ms. Douglas and Ms. Maguire by terminating their employment.

89.     The short temporal proximity between each of Ms. Douglas' and Ms. Maguire's instances of protected activity and the adverse employment actions that followed support an inference of causation.

90.      Naik acted in a willful and wanton manner and in callous disregard for Plaintiffs' federally protected rights.

91.     As a direct and proximate result of Naik's discriminatory conduct, Plaintiffs have suffered and will continue to suffer considerable injury, including but not limited to loss of substantial past and future salary and income, mental anguish, emotional distress, humiliation, and other compensable damages unless and until this Court grants relief.

## COUNT THREE
### Section 1981 and Title VII – Race Discrimination
### On behalf of Phoebe Douglas

92.    Plaintiff incorporates by reference paragraphs 15 to 62 as alleged above.

93.    Section 1981 prohibits disparate treatment in employment on the basis of race and guarantees Black citizens "full and equal benefit of all laws . . . as enjoyed by white citizens." 42 U.S.C. § 1981.

94.    Ms. Douglas is a Black woman and member of a protected class.

95.    Ms. Douglas was qualified for her role at Naik. Naik promoted Ms. Douglas to "Manager" and continued to assign her additional responsibility and supervisory authority throughout her employment with the Company. Naik never issued Ms. Douglas any negative performance feedback during her tenure.

96.    Naik refused to promote Ms. Douglas to a "Director" or "Deputy Director" role because of her race. Naik promoted non-Black employees, such as Ms. Quinones, to a Vice President role, but refused to promote Ms. Douglas. Naik's articulated reason for this refusal to promote is pretextual, as demonstrated by Ms. Quinones' title.

97.    Naik engaged in a pattern of refusing to promote Black employees to executive-level titles.

98.    Naik also refused to pay Ms. Douglas equally compared to non-Black employees who performed the same duties as her, including CJ Anderson ($105.44/hour); Jayesh Patel ($93.58/hour); and Jack Harman ($80.78/hour). Naik paid Ms. Douglas $68/hour.

99.    White employees refused to respect Ms. Douglas because of her race, routinely ignored her authority, and insisted on only communicating with Ms. Douglas' direct supervisor, Ms. Maguire (who is White).

100.    Naik demoted Ms. Douglas because of her race and later terminated Ms. Douglas' employment because of her race. Prior to Ms. Douglas' demotion, she was the *only* Black member of Naik's upper management. Naik disproportionately included people of color in its pretextual "restructuring," revealing a pattern of race discrimination.

101.    Naik subjected Ms. Douglas to adverse terms and conditions of employment because of her race.

102.    Naik denied Ms. Douglas the full and equal benefit of employment because of her race by treating her adversely compared to non-Black employees.

103.    Naik acted in a willful and wanton manner and in callous disregard for Plaintiff's federally protected rights.

104.    As a direct and proximate result of Naik's discriminatory conduct, Plaintiff has suffered and will continue to suffer considerable injury, including but not limited to loss of substantial past and future salary and income, mental anguish, emotional distress, humiliation, and other compensable damages unless and until this Court grants relief.

<u>**COUNT FOUR**</u>
**Section 1981 - Retaliation**
**On behalf of Phoebe Douglas**

105.    Plaintiff incorporates by reference paragraphs 15 to 62 as alleged above.

106.    Section 1981 prohibits retaliation against employees who complain about a violation of Section 1981 in the workplace.

107.    Ms. Douglas engaged in protected activity on January 23, 2024 when she complained about Naik's refusal to hold non-Black employees to the same performance standards as herself and other Black employees.

108.    By March 1, 2024, approximately 30 days after Ms. Douglas engaged in protected activity, Naik leadership began discussing a "restructuring."

109.    On May 7, 2024, Naik retaliated against Ms. Douglas by demoting her, including reducing her responsibility and supervisory capacity, re-assigning her to a lower position in the reporting hierarchy, and re-assigning her to a less-prestigious geographic region.

110.    On August 5, 2024, Ms. Douglas engaged in protected activity by filing a Charge of Discrimination with the EEOC.

111.    From August 7-13, 2024, Ms. Douglas continued to send internal complaints of gender discrimination and illegal overhead charging practices in violation of public agency contracts, along with other unlawful employment practices to Naik's majority owner and Naik's Human Resources Department.

112.    On August 14, 2024, Naik retaliated against Ms. Douglas by terminating her employment.

113.    The short temporal proximity between each of Ms. Douglas' instances of protected activity and the adverse employment actions that followed support an inference of causation.

114.    Naik acted in a willful and wanton manner and in callous disregard for Plaintiff's federally protected rights.

115.    As a direct and proximate result of Naik's discriminatory conduct, Plaintiff has suffered and will continue to suffer considerable injury, including but not limited to loss of substantial past and future salary and income, mental anguish, emotional distress, humiliation, and other compensable damages unless and until this Court grants relief.

### COUNT FIVE
**NYSHRL and NYCHRL – Gender Discrimination**
**On behalf of Phoebe Douglas and Lindsay Maguire**

116.    Plaintiffs incorporate by reference paragraphs 15 to 62 as alleged above.

117.    The NYSHRL "prohibits employers from 'discriminating against [an] individual in compensation or in terms, conditions or privileges of employment.'" N.Y. Exec. Law§ 296.

118.    Similarly, the NYCHRL makes it unlawful for an employer "to discriminate against such person in compensation or in terms, conditions or privileges of employment" "because of protected characteristic." N.Y.C. Admin. Code § 8-107(1)(a).

119.    To plead a discrimination claim under both the NYSHRL and NYCHRL, a plaintiff must allege only that she was treated "less well" because of a discriminatory intent. *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021) (vacated on other grounds).

120.    Plaintiffs were qualified for their roles at Naik. Naik never issued either Ms. Douglas or Ms. Maguire any negative performance feedback. Instead, both Ms. Maguire and Ms. Douglas received promotions during their tenure with Naik.

121.    Both Ms. Douglas and Ms. Maguire are female and members of a protected class.

122.    Naik subjected Ms. Douglas and Ms. Maguire to adverse terms and conditions of employment because of their gender.

123.    Naik denied Ms. Douglas equal pay with male coworkers who performed substantially-similar job duties.

124.    Male coworkers refused to recognize Ms. Douglas' authority because of her gender and routinely obstructed her ability to perform her job.

125.     Naik denied Ms. Maguire the same resources, authority, and recognition that it awarded to male employees. Male coworkers excluded Ms. Maguire, ignored her input, and intentionally dismissed and diminished her accomplishments.

126.     Naik demoted Ms. Douglas and Ms. Maguire because of their gender in its May 7, 2024 "restructuring." Naik did not demote any male employees.

127.     Naik terminated Ms. Douglas' and Ms. Maguire's employment on August 14, 2024 because of their gender.

128.     Naik disproportionally terminated the employment of women during the company "restructuring" which occurred in Summer 2024, while transferring male employees to other roles or finding them new employment.

129.     Naik acted in a willful and wanton manner and in callous disregard for Plaintiffs' statutorily protected rights.

130.     As a direct and proximate result of Naik's discriminatory conduct, Plaintiffs have suffered and will continue to suffer considerable injury, including but not limited to loss of substantial past and future salary and income, mental anguish, emotional distress, humiliation, and other compensable damages unless and until this Court grants relief.

## <u>COUNT SIX</u>
### NYSHRL and NYCHRL – Retaliation
### On behalf of Phoebe Douglas and Lindsay Maguire

131.     Plaintiffs incorporate by reference paragraphs 15 to 62 as alleged above.

132.     The NYSHRL prohibits retaliation against any employee who "has opposed any practices forbidden under this article or because ... she has filed a complaint, testified, or assisted in any proceeding under this article." N.Y. Exec. Law§ 296(7).

133.     Similarly, the NYCHRL prohibits employers from "retaliat[ing] or

discriminat[ing] in any manner against any person because such person has ... opposed any practice forbidden under this chapter." N.Y.C. Admin. Code § 8–107(7).

134.    Ms. Maguire engaged in protected activity when she complained to Mr. Naik on January 2, 2024 that male-led teams received more resources than her and her team and that she and her team were being held to a heightened performance standard compared to male-led teams, while being denied equal resources.

135.    Both Ms. Douglas and Ms. Maguire engaged in protected activity on January 23, 2024 when they complained about Naik's refusal to hold male employees to the same performance standards as female employees.

136.    By March 1, 2024, approximately 30 days after Ms. Douglas and Ms. Maguire engaged in protected activity, Naik leadership began discussing a "restructuring."

137.    On May 7, 2024, Naik retaliated against Ms. Douglas and Ms. Maguire by demoting them, including reducing their responsibility and supervisory capacity, re-assigning them to a lower position in the reporting hierarchy, and re-assigning them to a less-prestigious geographic region.

138.    On August 5, 2024, both Ms. Douglas and Ms. Maguire engaged in protected activity by filing Charges of Discrimination with the EEOC.

139.    From August 7-13, 2024, Ms. Douglas and Ms. Maguire continued to send internal complaints of gender discrimination and illegal overhead charging practices, along with other unlawful employment practices to Naik's majority owner and Naik's Human Resource Department.

140.    On August 14, 2024, Naik retaliated against Ms. Douglas and Ms. Maguire by terminating their employment.

141.    The short temporal proximity between each of Ms. Douglas' and Ms. Maguire's instances of protected activity and the adverse employment actions that followed support an inference of causation.

142.    Naik acted in a willful and wanton manner and in callous disregard for Plaintiffs' statutorily protected rights.

143.    As a direct and proximate result of Naik's discriminatory conduct, Plaintiffs have suffered and will continue to suffer considerable injury, including but not limited to loss of substantial past and future salary and income, mental anguish, emotional distress, humiliation, and other compensable damages unless and until this Court grants relief.

**COUNT SEVEN**
**NYSHRL and NYCHRL – Race Discrimination**
**On behalf of Phoebe Douglas**

144.    Plaintiff incorporates by reference paragraphs 15 to 62 as alleged above.

145.    The NYSHRL "prohibits employers from 'discriminating against [an] individual in compensation or in terms, conditions or privileges of employment.'" N.Y. Exec. Law§ 296.

146.    Similarly, the NYCHRL makes it unlawful for an employer "to discriminate against such person in compensation or in terms, conditions or privileges of employment" "because of protected characteristic." N.Y.C. Admin. Code § 8-107(1)(a).

147.    To plead a discrimination claim under both the NYSHRL and NYCHRL, a plaintiff must allege only that she was treated "less well" because of a discriminatory intent. *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021) (vacated on other grounds).

148.    Ms. Douglas is a Black woman and member of a protected class.

149.    Ms. Douglas was qualified for her role at Naik. Naik promoted Ms. Douglas to "Manager" and continued to assign her additional responsibility and supervisory authority throughout her employment with the Company. Naik never issued Ms. Douglas any negative performance feedback during her tenure.

150.    Naik refused to promote Ms. Douglas to a "Director" or "Deputy Director" role or provide her with pay commensurate with the duties she performed because of her race. Naik promoted non-Black employees, such as Ms. Quinones, to a Vice President role, but refused to promote Ms. Douglas. Naik's articulated reason for this refusal to promote is pretextual, as demonstrated by Ms. Quinones' title.

151.    Naik engaged in a pattern of refusing to promote Black employees to executive-level titles.

152.    Naik also refused to pay Ms. Douglas equally compared to non-Black employees who performed the same duties as her, including CJ Anderson ($105.44/hour); Jayesh Patel ($93.58/hour); and Jack Harman ($80.78/hour). Naik paid Ms. Douglas $68/hour.

153.    White employees refused to respect Ms. Douglas because of her race, routinely ignored her authority, and insisted on only communicating with Ms. Douglas' direct supervisor, Ms. Maguire (who is White).

154.    Naik demoted Ms. Douglas because of her race and later terminated Ms. Douglas' employment because of her race. Prior to Ms. Douglas' demotion, she was the *only* Black member of Naik's upper management. Naik disproportionately included people of color in its pretextual "restructuring," revealing a pattern of race discrimination.

155.    Naik subjected Ms. Douglas to adverse terms and conditions of employment because of her race.

156.    Naik denied Ms. Douglas the full and equal benefit of employment because of her race by treating her adversely compared to non-Black employees.

157.    Naik acted in a willful and wanton manner and in callous disregard for Plaintiff's statutorily protected rights.

158.    As a direct and proximate result of Naik's discriminatory conduct, Plaintiff has suffered and will continue to suffer considerable injury, including but not limited to loss of substantial past and future salary and income, mental anguish, emotional distress, humiliation, and other compensable damages unless and until this Court grants relief.

**COUNT EIGHT**
**FMLA – Retaliation**
**On behalf of Lindsay Maguire**

159.    Plaintiff incorporates by reference paragraphs 15 to 62 as alleged above.

160.    The FMLA prohibits retaliation against employees who exercise their rights under the FMLA. 29 U.S.C. § 2615.

161.    Ms. Maguire took FMLA starting on June 10, 2024 to cope with the extreme stress and mental anguish caused by Naik's work environment.

162.    Ms. Maguire was qualified for her position and was a successful and productive employee for nearly a decade prior to her FMLA leave. Naik never assigned Ms. Maguire any negative performance feedback, and even admitted that the May 7, 2024 demotion was not performance-motivated.

163.    On August 14, 2024, Naik terminated Ms. Maguire's employment while she was on FMLA leave.

164.    The fact that Naik terminated Ms. Maguire's employment while she was on leave creates an inference that the termination decision was made with retaliatory intent.

165.    Additionally, Naik engaged in a pattern of terminating the employment of employees who took or requested FMLA leave. During Summer 2024, Naik also terminated the employment of a member of Ms. Maguire's team who inquired about taking FMLA leave.

166.    Naik retaliated against Ms. Maguire for taking FMLA leave by terminating her employment while she was on leave.

167.    Naik acted in a willful and wanton manner and in callous disregard for Plaintiff's federally protected rights.

168.    As a direct and proximate result of Naik's discriminatory conduct, Plaintiff has suffered and will continue to suffer considerable injury, including but not limited to loss of substantial past and future salary and income, mental anguish, emotional distress, humiliation, and other compensable damages unless and until this Court grants relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment:

(a) declaring that the acts and practices complained of herein are violations of Section 1981, Title VII, the NYSHRL, the NYCHRL, and the FMLA;

(b) enjoining and permanently restraining these violations;

(c) directing Defendant to take such affirmative action as is necessary to ensure that the effects of these violations are eliminated;

(d) directing Defendant to place Plaintiffs in the position they would have occupied but for Defendant's discriminatory treatment, and to make them whole for all earnings they would have received but for Defendant's discriminatory treatment, including but not limited to wages, pension, interest, and other lost benefits;

(e)  directing Defendant to pay Plaintiffs compensatory damages for their mental anguish and emotional distress;

(f)  directing Defendant to pay Plaintiffs punitive and liquidated damages;

(g)  directing Defendant to pay Plaintiffs nominal damages;

(h)  awarding Plaintiffs pre- and post-judgment interest;

(i)  awarding Plaintiffs the costs of this action together with reasonable attorneys' fees; and

(j)  granting such other and further relief as this Court deems necessary and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action.

Respectfully Submitted,

*/s/ Melissa Washington*
Melissa Washington, Esq.
mw@washingtonfirmpllc.com
*/s/ Ivey Best*
Ivey Best, Esq. (to be admitted *pro hac vice*)
ib@washingtonfirmpllc.com
WASHINGTON LAW FIRM, PLLC
260 Madison Ave, 8th Floor
New York, NY 10016
(646) 823-1655