UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHOEBE DOUGLAS *and* LINDSAY MAGUIRE,

               Plaintiffs,

– *against* –

NAIK CONSULTING GROUP, P.C.,

               Defendant.

**OPINION & ORDER**

24 Civ. 07237 (ER)

RAMOS, D.J.:

    This action arises from a complaint of alleged employment discrimination and retaliation filed by Phoebe Douglas, a Black woman, and Lindsay Maguire, a White woman (collectively, "Plaintiffs"), against their former employer, Naik Consulting Group, P.C.

    Before the Court is Naik Consulting's partial motion to dismiss Plaintiffs' Complaint and for sanctions against Plaintiffs and their counsel. Doc. 15. For the reasons set forth below, the motions are DENIED.

**I.    BACKGROUND**

    **A.  Factual Background**

    The following facts are drawn from allegations contained in the amended complaint, which the Court accepts as true for purposes of the instant motion. *See, e.g.*, *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). Douglas and Maguire were employed by Naik Consulting as civil engineers. Doc. 19, Amended Complaint, at ¶ 18–21. Douglas was employed from November 2017 until August 2024, and Maguire from January 2015 until August 2024. *Id*. ¶¶ 3, 4. Plaintiffs allege they were two of very few female engineers both nationwide and within Naik Consulting, and that they suffered

disparate treatment, lower pay, lack of respect, and heightened performance standards.[1] *Id.* ¶ 1.  They led Naik's New York Civil Design group, which they describe as diverse, in contrast to the rest of the company, which they allege was largely made up of White and non-Black men.  *Id.*

Douglas alleges that Andrew Schueller, then vice president of civil engineering, made inappropriate and gender-based inquiries into her personal life when she requested a raise sometime before September 2020, such as whether if she was married or had children, then stating, "Oh so you just want to fund your lifestyle."  *Id.* ¶ 22.  She alleges Naik Consulting did not use marital or parental status of male employees to determine compensation.  *Id.*  In September 2020, Douglas was promoted to manager, where she reported to Maguire.  *Id.* ¶ 23.  Douglas alleges she performed the duties of a "director" or "deputy director" but was denied that official title and pay.  *Id.* ¶ 24.  Naik Consulting claimed she could not hold a "director" title because she lacked a professional engineer certification, but Douglas alleges Patricia Quinones, a non-Black employee, held a vice president title (higher than director) despite only having an engineer in training certification like Douglas.  *Id.* ¶ 25.  Douglas alleges Naik Consulting had no uniform policies for titles and promotions, disproportionately assigning executive-level titles to White and non-Black men, while Black and female employees did similar work but had less prestigious titles.  *Id.* ¶ 26.  She alleges she was paid $68/hour in 2024, less than non-Black male employees performing similar duties, such as CJ Anderson ($105.44/hour), Jayesh Patel ($93.58/hour), and Jack Harman ($80.78/hour).  *Id.* ¶ 27.

Maguire alleges that following her maternity leave from January 17, 2022, to April 25, 2022, Naik Consulting began treating her and her group as second-class employees compared to male-dominated groups.  *Id.* ¶ 28.  She alleges Mohyi Soliman,

---

[1] As of 2023, women represented only ~16% of civil engineers in the United States, with lower rates for Black women.  *See* National Center for Science and Engineering, "*The STEM Labor Force: Scientists, Engineers, and Skilled Technical Workers*," https://ncses.nsf.gov/pubs/nsb20245/representation-of-demographic-groups-in-stem.

an executive vice president and 5% owner of the company who directed the Project Management and Construction Management ("PMCM") group, excluded her from important publications, ignored her ideas, and credited her ideas to male group members. *Id*. ¶¶ 29–30.  For example, Soliman advertised only his primarily male group at a "Summer Streets" event conceived by Maguire and instructed a graphic designer to exclude Maguire from a Design Division booklet.  *Id*. ¶¶ 31–32.

In October 2022 Maguire complained to the Company's majority owner, Sanjay Naik, and human resources manager Marianne Provanzo, about Soliman's lack of respect, but alleges no helpful action was taken.  *Id*. ¶ 34.  She alleges Soliman's November 2022 "Naik Leadership" presentation listed primarily men, and included only Maguire as the sole woman, omitting the efforts of other female group members.  *Id*. ¶ 35.

Maguire alleges that, throughout 2023, Naik Consulting provided additional staff and resources to the male-led PMCM group, which were denied to her Civil Design group.  *Id*. ¶ 36.  For example, PMCM had a corporate safety officer, branding & public relations manager, business development leaders, a project controls group, and non-billable interns, while her group was denied all of these additional resources.  *Id*. ¶ 37.  She alleges PMCM leaders could award larger bonuses and had access to large expense accounts denied to her group, placing her and Douglas at a disadvantage.  *Id*. ¶¶ 38–40.

Douglas alleges that in May 2023, she was assigned as project manager for the Metro North Infrastructure Project, overseeing five sub-projects.  *Id*. ¶ 41.  She alleges Anthony Osterberg, a member of the PMCM group, refused to recognize her authority as a Black woman project manager, insisting on communicating with Maguire instead.  *Id*. ¶ 43.  Douglas alleges Osterberg undermined her authority and refused to execute responsibilities, leading her to step in for his group's guidance and site visits, but he then contested her charging management hours for such labor.  *Id*. ¶ 44.  She alleges Osterberg insisted his groups go over budget and refused her requests to pause charging.  *Id*. ¶ 45.

Douglas claims Osterberg "never disrespected and questioned non-[B]lack and male employees in this same manner" and "could not accept that [she], a [B]lack woman, was in a leadership role at the Company." Doc. 19-2 ¶ 14. She also alleges Osterberg lied when his direct report deleted important financial files and refused to hold his male direct report accountable. *Id*. ¶ 15.

Plaintiffs allege they complained to human resources that male and non-Black group members received preferential treatment. AC ¶¶ 46–49. On January 2, 2024, Maguire met with Mr. Naik for her annual performance review. At that review, she complained that male-led groups received more resources and were held to different standards. *Id*. ¶ 46.

On January 23, 2024, both Douglas and Maguire met with Mr. Naik and Soliman to complain that Osterberg and the PMCM group undermined their authority, were hostile to them, and obstructed their work. *Id*. ¶ 48. Soliman allegedly dismissed these complaints by stating that Osterberg was the "sixty-million-dollar man" and "didn't have time for this." *Id*. ¶ 48. Plaintiffs allege Naik Consulting refused to hold male-led groups responsible and did nothing to remedy their complaints. *Id*. ¶ 49.

On May 7, 2024, Naik Consulting announced a reorganization of leadership structure allegedly to streamline efficiency. *Id*. ¶ 50. As part of this restructuring, Maguire was demoted to general civil manager and Douglas from her manager title. *Id.* Plaintiffs allege that internal documents show planning for this restructuring actually began as early as March 1, 2024, approximately 37 days after Plaintiffs' complained to Mr. Naik and Soliman in person. *Id.* Maguire was reassigned from the New York to the New Jersey market and reported to her former peer, Hina Patel, instead of Mr. Naik, and her supervisory role was reduced. *Id*. ¶ 52. Douglas was removed from the leadership chart and excluded from management calls and meetings, and her direct reports were reassigned. *Id*. ¶ 53. Plaintiffs allege Naik Consulting did not reorganize or demote any male-led groups or male employees. *Id*. ¶ 54.

On August 5, 2024, Douglas filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging race and gender discrimination and retaliation. *Id.* ¶ 56. That same day, Douglas sent an email to Mr. Naik and human resources complaining of race and gender-based discrimination and expressing concerns about illegal overhead charging practices. *Id.* ¶ 56–58. Also on the same day, Maguire filed an EEOC charge alleging gender discrimination and retaliation. *Id.* ¶ 57. On August 9, 2024, Maguire sent an email to Mr. Naik and human resources reiterating her complaints about gender discrimination. *Id.* ¶ 59. On August 13, 2024, Douglas sent another email complaining about race and gender discrimination in Naik's promotion policies. *Id.* ¶ 60. Neither Mr. Naik nor the human resources department responded to any of these emails. *Id.* ¶ 61. Maguire began maternity leave under the Family Medical Leave Act ("FMLA") on June 10, 2024. *Id.* ¶ 55.

During the summer of 2024, Mr. Naik allegedly compelled Maguire to provide names of group members for termination, threatening to discipline her if she did not comply. *Id.* ¶ 65. Maguire ultimately complied, and of the five names she provided (three men, two women), Naik Consulting terminated the two women and another woman of color but found work or part-time employment for the men. *Id.* One male employee on Maguire's former group was also terminated, and Plaintiffs allege that he had recently inquired about taking FMLA leave. *Id.*

On August 14, 2024, one day after the last email complaining of discrimination email, Naik Consulting terminated Douglas and Maguire. *Id.* ¶ 62. Naik Consulting claimed that Maguire's termination was part of an additional restructuring effort and that Douglas's was terminated due to "lack of work." *Id.* ¶ 63. Plaintiffs allege this was pretextual, as Maguire's duties were reassigned to Hina Patel, and Naik Consulting posted job advertisements for civil engineers and business proposal manager positions listing the same duties as her previous role. *Id.* Plaintiffs allege that Naik Consulting

also disproportionately terminated other women of color and employees who inquired about FMLA leave.  *Id*. ¶ 64.

### B.  Procedural History

Douglas and Maguire filed EEOC Charges on August 5, 2024, and amended them on September 11, 2024.  *Id*. ¶¶ 10–13.  On September 25, 2024, Plaintiffs filed their original complaint in this action.  Doc. 1.  Plaintiffs assert claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and the Family Medical Leave Act of 1993 ("FMLA").  The complaint noted that the EEOC charges were still pending and stated that Plaintiffs would amend the Complaint upon receipt of notices of right to sue from the EEOC.  Doc. 1 ¶ 14.  On January 16, 2025, Naik Consulting filed a partial motion to dismiss the complaint and for sanctions against Plaintiffs and their counsel.  Doc. 15.  Naik Consulting argues that the Title VII claims were prematurely filed without a right to sue notice, and that the NYSHRL and NYCHRL claims were barred by the election of remedies doctrine due to Plaintiffs' cross-filing with the New York State Division of Human Rights.  Doc. 17 at 5–9.  The motion for sanctions is predicated on the assertion that Plaintiffs' inclusion of these claims was frivolous and intended for an improper purpose pursuant to Rule 11 and 28 U.S.C. § 1927.  *Id.* at 9–14.

On February 4, 2025, the EEOC issued right to sue letters to both Douglas and Maguire.  AC ¶ 15; AC, Exs. E, F.  Plaintiffs then filed an amended complaint on February 4, 2025, incorporating the receipt of these notice of right to sue letters.  Doc. 19.

## II.   LEGAL STANDARD & DISCUSSION

### A.  Motion to Dismiss for Failure to Exhaust Administrative Remedies

Pursuant to Title VII, a plaintiff must exhaust administrative remedies by filing a charge with the EEOC and allowing it to be pending for at least 180 days before filing suit in federal court.  *See* 42 U.S.C. § 2000e-5(f)(1); *Woods v. Dunlop Tire Corp.*, 972

F.2d 36, 39 (2d Cir. 1992).  While obtaining a notice of the right to sue is a statutory prerequisite, it is not a jurisdictional requirement and can be waived.  *Brunson-Bedi v. The State of New York*, No. 15 Civ. 9790 (NSR), 2018 WL 2084171, at *4 (S.D.N.Y. May 1, 2018); *see also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).  A plaintiff may cure a premature filing by obtaining the notice of the right to sue while the action is pending and amending the complaint.  *Id.*; *see also Obago v. Union of American Hebrew Congregations*, No. 89 Civ. 0608 (LBS), 1989 WL 88665, at *2 (S.D.N.Y. Aug. 3, 1989).

In light of the Plaintiffs' receipt of their notices of the right to sue and the subsequent filing of the Amended Complaint, Defendant has, in its reply memorandum, withdrawn its motion to dismiss as to these counts.[2]  The motion to dismiss the Title VII claims is therefore moot.

### B. Motion to Dismiss the NYSHRL and NYCHRL Claims Pursuant to the Election of Remedies

Naik Consulting moves to dismiss the NYSHRL and NYCHRL claims, arguing that the Court lacks subject matter jurisdiction pursuant to the election of remedies doctrine.  The NYSHRL and the NYCHRL include functionally identical "election of remedies" provisions.  The NYSHRL provides that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction . . . unless such person had filed a complaint hereunder or with any local commission on human rights."  N.Y. Exec. Law § 297(9); *see also* N.Y.C. Admin. Code § 8-502(a) (NYCHRL, providing the same).

---

[2] In its Reply Memorandum, Naik's counsel states:  "Defendant withdraws its motion to dismiss only to the extent it sought dismissal of Counts One, Two, and Three . . . because the Court has not yet decided the instant motion and Plaintiffs have each received a [notice of the right to sue letter] from the EEOC and filed the Amended Complaint alleging exhaustion of administrative remedies."  Doc. 22 at 2.  While the motion to dismiss these counts is now moot, the Court will still consider the motion for sanctions as it relates to the initial filing of these claims.

7

The bar is, however, not absolute.  New York law recognizes two primary exceptions.  The first allows a plaintiff to file suit where an administrative complaint is dismissed for "administrative convenience."  N.Y. Exec. Law § 297(9).  The second, more pertinent exception provides that a "complaint filed by the [EEOC] to comply with the requirements of 42 [U.S.C.] 2000e-5(c) . . . shall not constitute the filing of a complaint within the meaning of this subdivision."  *Id.*  This exception preserves a complainant's right to a judicial forum when their charge is filed with the New York State Division of Human Rights ("NYSDHR") not by their own choice, but as a result of the EEOC's duty-sharing and referral procedures.  *See Barr v. BJ's Wholesale Club, Inc.*, 62 A.D.3d 820, 821 (2d Dep't 2009).  A charge filed with the EEOC is not considered filed with the NYSDHR for election of remedies purposes "until such time as the complaint is actually forwarded to the DHR by EEOC, and DHR opens a file."  *Presser v. Key Food Stores Co-op., Inc.*, No. 01 Civ. 8059 (ILG), 2002 WL 31946714, at *3 (E.D.N.Y. Dec. 3, 2002) (citing *EEOC v. Rotary Corp.*, 164 F. Supp. 2d 306, 309 (N.D.N.Y. 2001)).  "Because the election of remedies limitation divests a federal court of jurisdiction to decide [a] state law claim, a motion to dismiss on this ground is properly brought pursuant to [Fed. R. of Civ. P.] 12(b)(1)."  *Skalafuris v. City University of N.Y.*, No. 09 Civ. 5693 (SAS), 2010 WL 1050299, at *2 (S.D.N.Y. Mar. 22, 2010) (footnote omitted), *aff'd sub nom. Skalafuris v. City of N.Y.*, 444 F. App'x 466 (2d Cir. 2011); *see also Levi v. RSM McGladrey, Inc.*, No. 12 Civ. 8787 (ER), 2014 WL 4809942, at *2 (S.D.N.Y. Sept. 24, 2014).

Rule 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case.  *See Mason Tenders District Council of Greater New York and Long Island v. CAC of New York, Inc.*, 46 F. Supp. 3d 432, 435 (S.D.N.Y. 2014).  The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists.  *See Morrison v. Nat'l Australia*

8

*Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, evidence outside of the pleadings, such as affidavits, may be considered by the Court to resolve the disputed jurisdictional fact issues.  *See Zappia Middle East Construction Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *see also Morrison*, 547 F.3d at 170 (citing *Makarova*, 201 F.3d at 113).  When evaluating a motion to dismiss for lack of subject matter jurisdiction, the Court accepts all material factual allegations in the complaint as true but does not draw inferences from the complaint favorable to the plaintiff.  *See J.S. ex rel. N.S. v. Attica Central Schools*, 386 F.3d 107, 110 (2d Cir. 2004) (citing *Shipping Financial Services Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).

Here, Naik Consulting argues that Douglas and Maguire elected their remedies by "cross-filing" their EEOC Charges with the NYSDHR.  Naik Consulting contends this precludes Plaintiffs from pursuing their NYSHRL and NYCHRL claims in this Court.  However, Plaintiffs assert they have no charge currently pending with the NYSDHR.  Plaintiffs state that the NYSDHR never opened a case file for either of them, never assigned a case number, and never investigated their charges.  When Plaintiffs sought updates from the NYSDHR, they were referred back to the EEOC.  This indicates the NYSDHR did not actively engage in an investigation.  Douglas and Maguire also contend that their EEOC filings fall within the "automatic referral" exception to the election of remedies doctrine.[3]  Plaintiffs emphasize that they filed their charges directly with the EEOC, not the NYSDHR.  They argue the language on the EEOC form regarding dual-filing is boilerplate and does not reflect a voluntary election on their part.  This aligns

---

[3] The EEOC-NYSDHR work-sharing agreement typically results in dual filing, but courts have held that *only* an active investigation by NYSDHR constitutes an "election" pursuant to state law.  *See generally Moodie v. Federal Reserve Bank of N.Y.*, 58 F.3d 879 (2d Cir. 1995).  Under a work-sharing agreement, the agencies coordinate investigations to prevent duplication and ensure charges are processed under both federal and state anti-discrimination laws.  This allows a single complaint to be dual-filed and handled by one agency on behalf of both.

9

with the reasoning in *Barr v. BJ's Wholesale Club, Inc.*, where a motion to dismiss was denied because "[t]here [was] no indication that the plaintiff filed charges or an administrative complaint directly with the [NYSDHR] and there [was] no indication that the [NYSDHR] ever investigated the charges referred to it by the EEOC or opened a file on behalf of the plaintiff[.]" 62 A.D.3d 820, 821 (2d Dep't 2009). Similarly, in *Presser v. Key Food Stores Co-op., Inc.*, the court noted that an EEOC charge is not deemed filed with the state agency for election of remedies purposes until the state agency actually opens a file and begins investigation. No. 01 Civ. 8059 (ILG), 2002 WL 31946714, at *3 (E.D.N.Y. Dec. 3, 2002).

    Naik Consulting points to *Jackson v. NYS Department of Labor* for the proposition that claims are barred where the plaintiff "personally filed her claim with the SDHR and the EEOC." 709 F. Supp. 2d 218, 225 (S.D.N.Y. 2010). However, in *Jackson*, the court emphasized the plaintiff "*personally* filed her claim with the SDHR *and* the EEOC." *Id.* (emphasis added). Here, Plaintiffs distinguish their situation by asserting that the NYSDHR never actually commenced an investigation or opened a file. Therefore, based on the record, Plaintiffs did not voluntarily elect to pursue their claims with the NYSDHR and are not precluded from bringing these claims in federal court.

### C. Motion for Sanctions

    Defendant seeks sanctions against Plaintiffs and their counsel, pursuant to Rule 11, 28 U.S.C. § 1927, and the Court's inherent powers.[4] Determining the appropriateness of imposing sanctions is "one of the most difficult and unenviable tasks for a court." *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 341 (2d Cir. 1999). Courts must balance the goal of disciplining those "who harass their opponents and waste judicial resources by abusing the legal process" with the expectation that litigants and

---

[4] Prior to filing its motion, Defendant served Plaintiffs with a "safe harbor" letter pursuant to Rule 11(c)(2), demanding withdrawal of the claims and giving Plaintiffs 21 days to comply before a motion for sanctions would be filed with the Court. Doc. 16-5.

their attorneys will "pursue a claim zealously within the boundaries of the law and ethical rules." *Id.* The issue of sanctions "brings to the surface the tension between the goal of discouraging abuse of the legal system and that of encouraging refinement of the law through the assertion of novel but non-frivolous legal theories." *Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.*, 186 F.3d 157, 166 (2d Cir. 1999).

Rule 11(b) requires an attorney to certify that a pleading is not presented for any improper purpose, is warranted by existing law or a nonfrivolous argument for extending or modifying law and has evidentiary support. The standard for imposing Rule 11 sanctions is "objective unreasonableness." *Mahoney v. Yamaha Motor Corp. U.S.A.*, 290 F.R.D. 363, 367 (E.D.N.Y. 2013) (citing *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000)). Sanctions are appropriate only when it is "patently clear that a claim has absolutely no chance of success." *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986). Rule 11 applies only to the initial signing of a paper, not to a continuing obligation to withdraw a claim that later becomes frivolous. *Id.* at 1274, 1275.

Pursuant to 28 U.S.C. § 1927, a court may impose sanctions on an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." Imposition of a sanction pursuant to § 1927 requires a "clear showing of bad faith." *Oliveri*, 803 F.2d at 1273 (quoting *Kamen v. American Telephone and Telegraph Co.*, 791 F.2d 1006, 1010 (2d Cir. 1986)). Similarly, a court's inherent power to sanction may be exercised when there is "'clear evidence' that the challenged actions 'are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes.'" *Oliveri*, 803 F.2d at 1272 (quoting *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir. 1986)). Bad faith "may be inferred 'only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'" *Schlaifer Nance & Co., Inc.*, 194 F.3d at 338 (quoting *Shafii v. Brit. Airways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996)). The test for sanctions pursuant to both § 1927 and inherent powers is conjunctive, requiring both a lack of merit

11

and improper purpose. *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000). Awards pursuant to § 1927 are made only against attorneys, while awards pursuant to the court's inherent power may be made against an attorney, a party, or both. *Oliveri*, 803 F.2d at 1273.

A claim is "entirely without color" when it "lacks any legal or factual basis." *Schlaifer Nance & Co., Inc.*, 194 F.3d at 337 (citation omitted). Conversely, a claim is "colorable" when it "has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." *Id.* The question is whether a "reasonable attorney" could have concluded that facts supporting the claim might be established. *Id.* A claim that fails as a matter of law is not necessarily lacking any basis at all. *Id.* A determination of improper purpose cannot turn entirely on a determination that a claim was frivolous. *See Simon DeBartolo Group, L.P.*, 186 F.3d at 177. There may be a "considerable difference" for Rule 11 purposes between an entirely frivolous complaint and a complaint including both "doubtful" counts and counts of "reasonable merit." *Id.* (citation omitted). "The standard for imposing Rule 11 sanctions," indeed, "is purposefully high, so as not to stifle legal creativity and zealous advocacy." *City of Perry, Iowa v. Procter & Gamble Co.*, No. 15 Civ. 8051 (JMF), 2017 WL 2656250, at *2 (S.D.N.Y. June 20, 2017). They should be granted with caution, applied only when "a particular allegation is utterly lacking in support." *In re Highgate Equities, Ltd.*, 279 F.3d 148, 154 (2d Cir. 2002) (internal quotation marks and citation omitted). A court must review the facts "objectively," *see Storey v. Cello Holdings, LLC.*, 347 F.3d 370, 387 (2d Cir. 2003), and "[w]hen divining the point at which an argument turns from merely losing to losing and sanctionable, . . . resolve all doubts in favor of the signer" of the pleading. *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (internal quotation marks and citation omitted).

A finding that Rule 11 has been violated does not compel the imposition of sanctions. Indeed, under Rule 11(c), "[i]f, after notice and a reasonable opportunity to

12

respond, the court determines that Rule 11(b) has been violated, the court *may* impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1) (emphasis added); *see also Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir.2012) (holding that "sanctions under Rule 11 are discretionary, not mandatory"); *Bernhardt v. Tradition North America*, 676 F. Supp. 2d 301, 306 (S.D.N.Y. 2009) (stating that a motion for sanctions under Rule 11 raises two issues: (1) whether Rule 11 has been violated, and (2) whether the court should exercise its discretion to award sanctions based on the violation).

Here, Naik Consulting seeks sanctions against Plaintiffs and their counsel. Douglas and Maguire do not dispute that their initial Title VII claims were filed before receipt of a notice of the right to sue letter. *See* Doc. 1; AC ¶ 15. However, they contend that this was not done for an improper purpose but as a "single-filing strategy" that is recognized by our court to conserve time, energy, and resources for all parties and the court. *See* Doc. 20 at 6; *Woods v. Dunlop Tire Corp.*, 972 F.2d 36 (2d Cir. 1992). Therein the court identified two viable courses of action to avoid dismissal: (1) file the time-sensitive claim and then request a stay of the case pending the outcome of the administrative proceedings, after which the complaint can be amended; or (2) file the initial suit, wait for the notice of right to sue letter from the administrative agency, and then amend the complaint to add the exhausted claim. This framework allows a plaintiff to preserve all legal claims without having them barred by either a statute of limitations or the doctrine of res judicata. *Id*. Plaintiffs explain that this approach was particularly crucial to preserve Douglas's Section 1981 claims, which had a four-year statute of limitations expiring in September 2024. *See generally Paupaw-Myrie v. Mount Vernon City School District*, 653 F. Supp. 3d 80, 95 (S.D.N.Y. 2023). Section 1981 claims are not tolled by EEOC administrative proceedings. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 465–66 (1975). Had Douglas waited until February 2025—when she

13

ultimately received her notice of right to sue letter—to bring her Section 1981 claims, she would have lost at least six months of potential damages as untimely. *See generally* Doc. 19; *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Plaintiffs argue that forcing them to file Douglas's Section 1981 and FMLA claims separately in September 2024 and then requiring an amended complaint for Title VII and other claims months later, would have resulted in duplicative work, increased expense, and unnecessary delay for all parties. *See* Doc. 20. This strategy, they maintain, is "common practice in federal courts across the country" and "in line with conduct condoned by New York courts." *Id.*; *see Brunson-Bedi v. New York*, 15 Civ. 9790 (NSR), 2018 WL 2084171, at *4 (S.D.N.Y. May 1, 2018) (holding that "Plaintiff's receipt of the . . . right-to-sue letter, albeit issued and received after the initiation of this lawsuit, renders any prior exhaustion defects cured.").

The court finds that Plaintiffs' decision to file their initial complaint before receipt of a notice of right to sue letter is not sanctionable conduct. Indeed, Plaintiffs' chosen strategy aligns with the alternative discussed in *Dunlop Tire Corp.*, 972 F.2d at 41. They filed all claims initially to avoid statute of limitations issues for Douglas's Section 1981 claims and to prevent piecemeal litigation before then promptly curing the Title VII exhaustion defect upon receipt of the notice of the right to sue letter. Doc. 1; AC ¶ 15; Doc. 19. Moreover, Naik Consulting was aware of the Plaintiffs' intent to amend their complaint upon receipt of the notice of the right to sue letter. Doc. 1 ¶ 14. Plaintiffs' conduct, therefore, does not rise to the "egregious and intentionally vexatious" level required for sanctions pursuant to Rule 11 or 28 U.S.C. § 1927. Naik's motion for sanctions is therefore denied.

### III.  CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED, and Defendant's motion for sanctions is also DENIED.

The parties are directed to appear for a conference on August 12, 2025, at 10:30 a.m. in Courtroom 619 of the United States Courthouse, 40 Foley Square, New York, NY 10007.

The Clerk of the Court is respectfully directed to terminate the motion, Doc. 15.

It is SO ORDERED.

Dated:    July 21, 2025
             New York, New York

                                                               EDGARDO RAMOS, U.S.D.J.